Brian S. King, #4610
Brent J. Newton, #6950
Samuel M. Hall, #16066
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
samuel@briansking.com

Attorneys for Plaintiff

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| N.J., individually and on behalf of M.J. a minor,<br><br>              Plaintiff,<br><br>vs.<br><br>ANTHEM BLUE CROSS and BLUE SHIELD.<br><br>              Defendant. | COMPLAINT<br><br>Case No. 1:22-cv-00022 - HCN |

Plaintiff N.J., individually and on behalf of M.J. a minor, through his undersigned counsel, complains and alleges against Defendant Anthem Blue Cross and Blue Shield ("Anthem") as follows:

**PARTIES, JURISDICTION AND VENUE**

1. N.J. and M.J. are natural persons residing in Boulder County, Colorado. N.J. is M.J.'s father.

2. Anthem is the trade name of Rocky Mountain Hospital and Medical Services, Inc. and is an independent licensee of the nationwide Blue Cross and Blue Shield association of

1

providers. Anthem was the insurer and claims administrator, as well as the fiduciary under ERISA for the insurance plan providing coverage for N.J. and M.J. ("the Plan") during the treatment at issue in this case.

3. The Plan is a fully-insured employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). N.J. was a participant in the Plan and M.J. was a beneficiary of the Plan at all relevant times. N.J. and M.J. continue to be participants and beneficiaries of the Plan.

4. M.J. received medical care and treatment at Solstice RTC, LLC. ("Solstice") from September 3, 2020, to July 9, 2021. Solstice is a licensed residential treatment facility located in Davis County Utah, which provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

5. Anthem denied claims for payment of M.J.'s medical expenses in connection with her treatment at Solstice.

6. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

7. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, because Anthem does business in Utah, and the treatment at issue took place in Utah. In addition, venue in Utah will save the Plaintiff costs in litigating this case. Finally, in light of the sensitive nature of the medical treatment at issue, it is the Plaintiff's desire that the case be resolved in the State of Utah where it is more likely that both his and M.J.'s privacy will be preserved.

8. The remedies the Plaintiff seeks under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B), for

appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendant's violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

## BACKGROUND FACTS

### Solstice

9. M.J. was admitted to Solstice on September 3, 2020, due to complications with depression, anxiety, and ADHD, including suicidal ideation and drug and alcohol abuse.

10. In a letter dated September 4, 2020, Anthem denied payment for M.J.'s treatment at Solstice. The letter stated that Solstice was an excluded service due to:

> As Stated in your Member Benefit Agreement in the section Facility it states, A [sic] facility including but not limited to, a Hospital, freestanding Ambulatory Surgical Facility, Chemical Dependency Treatment Facility, Residential Treatment Center, Skilled Nursing Facility, Home Health Care Agency or mental health facility, as defined in this Booklet. The Facility must be licensed, accredited, registered or approved by The Joint Commission or the Commission on Accreditation of Rehabilitation Facilities (CARF), as applicable or meet specific rules set by us. Solstice RTC LLC is not an accredited facility therefore authorization for Residential Psychiatric level of care is/are excluded from coverage.[1]

11. On November 18, 2020, N.J. submitted an appeal of the denial of payment for M.J.'s treatment at Solstice.

12. N.J. reminded Anthem that he was entitled to certain protections during the review process and Anthem was required to provide him with a full, fair, and thorough review using appropriately qualified reviewers whose identities were clearly disclosed, which took into account all of the information he provided, and which gave him the specific

---

[1] Capitalization in quoted materials retained from the original. In general, when these terms are capitalized when they otherwise would not be, they represent a term that is defined elsewhere in the insurance policy.

3

reason(s) for the adverse determination, referenced the specific plan provisions on which the determination was based, and which provided him with the information necessary to perfect the claim.

13. N.J. stated that Solstice met the Plan's definition of a facility which he quoted as saying:

    Facility

    A facility including but not limited to, a Hospital, freestanding Ambulatory Surgical Facility, Chemical Dependency Treatment Facility, Residential Treatment Center, Skilled Nursing Facility, Home Health Care Agency or mental health facility, as defined in this Booklet. The facility must be licensed, accredited, registered or approved by The Joint Commission or the Commission on Accreditation of Rehabilitation Facilities (CARF), as applicable or meet specific rules set by us.

14. He also stated that Solstice met the definition of a provider which was defined as:

    Provider

    A professional or Facility licensed by law that gives health care services within the scope of that license and is approved by us. This includes any Provider that state law says we must cover when they give you services that state law says we must cover. Providers that deliver Covered Services are described throughout this Booklet.

15. He argued that Anthem was misapplying the language of the insurance policy. He pointed out that the language cited by Anthem did not necessarily say what Anthem had interpreted it to say. He used italics to denote that according to Anthem's own definition, a facility only needed to be licensed, accredited, registered *OR* approved by The Joint Commission or CARF.

16. He further noted that even then Anthem only enforced these requirements "as applicable" and also exempted facilities that "meet specific rules set by us."

17. N.J. wrote that Solstice satisfied all of the requirements for residential treatment centers established by Utah state law, which did not require accreditation from any particular

4

entity so long as the facility was duly licensed and was acting within the scope of that license.

18. He wrote that Anthem's decision to impose requirements above and beyond those required by state law was an arbitrary and capricious act which improperly disregarded the findings of the appropriate governing regulatory body and served only to inflate the cost of care without providing any actual benefit.

19. N.J. wrote that the Plan was subject to MHPAEA which required insurers to ensure mental health benefits were provided at parity with comparable medical or surgical benefits.

20. N.J. identified skilled nursing, rehabilitation, and inpatient hospice facilities as some of the medical or surgical analogues to the treatment M.J. received.

21. He contended that Anthem was applying nonquantitative treatment limitations by imposing limitations on residential treatment care such as overly strict licensure requirements which it did not equally apply to analogous medical or surgical services.

22. N.J. illustrated this by including a table with the following information:

|  | RTC | Rehabilitation Facility | Hospice | Skilled Nursing |
|---|---|---|---|---|
| **Benefits** Licensure | "Residential Treatment in a licensed Residential Treatment Center" | Not Specified | Not Specified | "The Facility is licensed or certified under state law as a Skilled Nursing Facility, or is otherwise licensed to provide the services." |
| Accreditation | Not Specified | Not Specified | Not Specified | Not Specified |
| **Definitions** Licensure | "A Provider licensed and operated as | Not Defined | "It must be licensed by the appropriate | "A duly licensed Facility operated alone or with a |

| | required by law." | | agency. | Hospital… it must be licensed by the appropriate agency." |
|---|---|---|---|---|
| Accreditation | "Is fully accredited by The Joint Commission (TJC), the Commission on Accreditation of Rehabilitation Facilities (CARF) … | Not Defined | Not Specified | "It must be … accredited by The Joint Commission or the Bureau of Hospitals of the American Osteopathic Association." |

23. N.J. stated that in order for a restriction to not violate MHPAEA it could be no more restrictive than substantially all of the medical or surgical benefits in the same classification. N.J. alleged that Anthem failed this test and had applied requirements to residential treatment care which were not equally applied to most analogous medical or surgical facilities.

24. N.J. wrote that a discrepancy in licensure requirements was one of the items explicitly listed by the Department of Labor as a warning sign of a likely MHPAEA violation. He voiced his belief that on its face, the language of the insurance policy violated MHPAEA.

25. He wrote that he was entitled to relief under MHPAEA as he had demonstrated that:

    (1) The Plan is subject to MHPAEA.
    (2) The Plan offers coverage for both mental health/substance use benefits and medical/surgical benefits.
    (3) The appropriate analogues to M.J.'s treatment include skilled nursing, rehabilitation, and hospice facilities.
    (4) The requirements imposed on M.J.'s residential treatment were more restrictive than those which were imposed on analogous medical or surgical services.

26. N.J. requested that Anthem perform a MHPAEA compliance analysis to assess whether the Plan was being administered in accordance with MHPAEA. He asked Anthem to not only conduct this analysis but to provide him with physical copies of all documentation

used. He also asked to be provided with a copy of all the documents under which the Plan was operated.

27. In a letter dated February 16, 2021, Anthem upheld the denial of payment for M.J.'s treatment at Solstice. The letter gave the following justification for the denial:

> In your father's appeal request, he disagrees with the decision to deny services as a non-covered benefit. Solstice RTC does not meet the definition of an appropriate licensed facility under your plan. According to page 137 under the Definitions section of your Anthem Gold PPO benefit plan booklet dated 01/01/2020:
>
> "Residential Treatment Center / Facility
> A Provider licensed and operated as required by law, which includes:
> 1. Room, board and skilled nursing care (either an RN or LVN/LPN) available on-site at least hours daily with 24 hour availability.
> 2. A staff with one or more Doctors available at all times.
> 3. Residential treatment takes place in a structured facility based setting.
> 4. The resources and programming to adequately diagnose, care and treat a psychiatric and/or substance use disorder.
> 5. Facilities are designated residential, subacute, or intermediate care and may occur in care systems that provide multiple levels of care.
> 6. Is fully accredited by The Joint Commission (TJC), the Commission on Accreditation of Rehabilitation Facilities (CARF), the National Integrated Accreditation for Healthcare Organizations (NIAHO), or the Council on Accreditation (COA).
>
> The term Residential Treatment Center/Facility does not include a Provider, or that part of a Provider, used mainly for:
> 1. Nursing care
> 2. Rest care
> 3. Convalescent care
> 4. Care of the aged
> 5. Custodial Care
> 6. Educational care"
>
> Your father also mentions in his letter that we are not in compliance with the Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA). From our understanding, the health plan's determination is not a violation of the Parity Act. We do treat residential treatment centers the same as all intermediate levels of care and we are not holding your residential treatment to a stricter standard.

> Your father also stated concerns of NQTL and made a request for relevant documentation. These both will be addressed under separate cover. Please note this is a benefit coverage determination rather than a medical necessity denial.

28. Although the letter quoted the above definition of a residential treatment center, it did not specify which of the requirements, if any, Solstice allegedly failed to meet.

29. Anthem also sent the Plaintiff a letter dated February 17, 2021, which gave a denial which was essentially repeated verbatim from the September 4, 2020, letter except it referred to Solstice as Pathway Academy.

30. Anthem never addressed the NQTL arguments or sent copies of the requested documentation under separate cover.

31. The Plaintiff exhausted his pre-litigation appeal obligations under the terms of the Plan and ERISA.

32. The denial of benefits for M.J.'s treatment was a breach of contract and caused N.J. to incur medical expenses that should have been paid by the Plan in an amount totaling over $200,000.

## FIRST CAUSE OF ACTION

**(Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))**

33. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Anthem, acting as agent of the Plan, to discharge its duties in respect to claims processing solely in the interests of the participants and beneficiaries of the Plan. 29 U.S.C. §1104(a)(1).

34. Anthem and the Plan failed to provide coverage for M.J.'s treatment in violation of the express terms of the Plan, which promise benefits to employees and their dependents for

medically necessary treatment of mental health and substance use disorders.

35. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

36. Anthem and the agents of the Plan breached their fiduciary duties to M.J. when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in M.J.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, and to provide a full and fair review of M.J.'s claims.

37. The actions of Anthem and the Plan in failing to provide coverage for M.J.'s medically necessary treatment are a violation of the terms of the Plan and its medical necessity criteria.

## SECOND CAUSE OF ACTION

### (Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3))

38. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA. The obligation to comply with both ERISA and MHPAEA is part of Anthem's fiduciary duties.

39. Generally speaking, MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

40. MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and also

9

makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

41. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity; refusal to pay for higher-cost treatment until it can be shown that a lower-cost treatment is not effective; and restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A), (F), and (H).

42. The medical necessity criteria used by Anthem for the intermediate level mental health treatment benefits at issue in this case are more stringent or restrictive than the medical necessity criteria the Plan applies to analogous intermediate levels of medical or surgical benefits.

43. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for M.J.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities.

44. N.J. alleged that Anthem violated MHPAEA in that its licensure and accreditation requirements fail to pass the "substantially all" test, because in substantially all cases of intermediate level medical or surgical treatment, Anthem does not exclude or restrict coverage of medical/surgical conditions by imposing restrictions such as an accreditation requirement from a specific agency.

45. The Departments of Labor and Health and Human Services jointly compiled a list of "warning signs" which often accompany a violation of MHPAEA. Among the items listed are disparities in licensure requirements between mental health services and medical/surgical services.

46. N.J. produced a table showing that according to the plain language of the Plan Anthem's requirements for residential treatment care were more difficult to meet, as on their face the requirements for residential treatment care such as licensure and accreditation were more difficult to satisfy than the requirements for their medical/surgical counterparts.

47. Other disparities are present in the plan language as well. For instance, the summary plan description requires "one or more doctors available at all times" in a residential treatment center. However, a skilled nursing facility only requires that "Care [is] supervised by a Doctor." Rehabilitation and hospice care list no such requirement at all.

48. N.J. alleged that practices such as these were not medically necessary, not required by the appropriate state regulatory agencies, and if they were actually implemented by residential treatment centers would only serve to drive up the cost of residential treatment without providing corresponding benefit.

49. When Anthem and the Plan receive claims for intermediate level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice.

50. Anthem and the Plan evaluated M.J.'s mental health claims using medical necessity criteria that deviate from generally accepted standards of medical practice. This process resulted in a disparity because the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

51. The actions of Anthem and the Plan requiring conditions for coverage that do not align with medically necessary standards of care for treatment of mental health and substance use disorders and in requiring accreditation above and beyond the licensing requirements for state law violate MHPAEA because the Plan does not impose similar restrictions and coverage limitations on analogous levels of care for treatment of medical and surgical conditions.

52. In this manner, the Defendant violates 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the medical necessity criteria utilized by the Plan and Anthem, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

53. Despite N.J.'s request that Anthem and the Plan conduct a parity compliance analysis and despite the direction from the Department of Labor that ERISA plan and claim administrators perform parity compliance analyses, Anthem and the Plan have not provided N.J. with any information about whether they have carried out any parity compliance analysis and, to the extent that any such analysis was performed, Anthem and the Plan have not provided N.J. with any information about the results of this analysis.

54. Anthem made a declaration that it did not violate MHPAEA but did not present any evidence that it otherwise took N.J.'s concerns into account or performed any specific analysis. In its February 16, 2021, letter Anthem stated that it would produce a document directly addressing N.J.'s concerns regarding non-quantitative treatment limitations, but he never received any such document.

55. The violations of MHPAEA by Anthem and the Plan are breaches of fiduciary duty and also give the Plaintiff the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

    (a) A declaration that the actions of the Defendant violate MHPAEA;

    (b) An injunction ordering the Defendant to cease violating MHPAEA and requiring compliance with the statute;

    (c) An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendant to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

    (d) An order requiring disgorgement of funds obtained by or retained by the Defendant as a result of their violations of MHPAEA;

    (e) An order requiring an accounting by the Defendant of the funds wrongly withheld from participants and beneficiaries of the Plan as a result of the Defendant's violations of MHPAEA;

    (f) An order based on the equitable remedy of surcharge requiring the Defendant to provide payment to the Plaintiff as make-whole relief for his loss;

    (g) An order equitably estopping the Defendant from denying the Plaintiff's claims in violation of MHPAEA; and

    (h) An order providing restitution from the Defendant to the Plaintiff for his loss arising out of the Defendant's violation of MHPAEA.

56. In addition, Plaintiff is entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g).

WHEREFORE, the Plaintiff seeks relief as follows:

1. Judgment in the total amount that is owed for M.J.'s medically necessary treatment at Solstice under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

2. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiff's Second Cause of Action;

3. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

4. For such further relief as the Court deems just and proper.

DATED this 14th day of February, 2022.

By    s/ Brian S. King
      Brian S. King
      Attorney for Plaintiff

County of Plaintiff's Residence:
Boulder County, Colorado